432 A.2d 985

Nicholas MAZZIE and Council 13, American Federation of State County and Municipal Employees, AFL–CIO, by its Trustee Ad Litem, Gerald W. McEntee, Petitioners-Appellees,

v.

COMMONWEALTH of Pennsylvania; Honorable Richard Thornburgh, Governor of the Commonwealth of Pennsylvania; and Robert C. Wilburn, Secretary of Budget and Administration, Respondents-Appellants,

Joint Bargaining Committee of the Pennsylvania Social Services Union, Local 668, and the Pennsylvania Employment Security Employees' Association, Local 675, SEIU, AFL–CIO, by its Trustees Ad Litem, Andrew Stern and Edward Farrell; and the Pennsylvania Social Services Union, Local 668, SEIU, AFL–CIO, by its Trustee Ad Litem, Andrew Stern, Intervenors-Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 19, 1981.

Decided July 20, 1981.

David H. Allshouse, Allen C. Warshaw, Chief, Litigation (Civil), Deputy Atty. Gen., Harvey Bartle, III, Atty. Gen., for respondents-appellants.

Richard Kirschner, Alaine S. Williams, Philadelphia, for petitioners-appellees Mazzie, et al.

Bruce M. Ludwig, Philadelphia, for Joint Bargaining Comm.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This is an appeal from an order of the Commonwealth Court dated November 6, 1980, granting appellees preliminary injunctive relief from the Commonwealth's enforcement of financial disclosure requirements pursuant to Executive Order 1980–18. The order stipulated that an appeal by the Commonwealth would not act as an automatic supersedeas under Pa.R.A.P. 1736. On November 7, 1980, the Commonwealth filed a notice of appeal to this Court pursuant to 42 Pa.C.S.A. §§ 723(a), 5105, and Pa.R.A.P. 311(a)(4), and requested a stay pursuant to Pa.R.A.P. 1732(b), which we denied.

Appellees commenced this action in Commonwealth Court on October 31, 1980, by a Petition for Review and Motion for Temporary Restraining Order. Appellees are Nicholas Mazzie, an employee of the Department of Agriculture, and Council 13, American Federation of State, County and Municipal Employees, AFL–CIO (hereinafter, AFSCME), the exclusive bargaining agent for approximately 1,500 Commonwealth employees affected by Executive Order 1980–18. On November 3, 1980, the Joint Bargaining Committee of

the Pennsylvania Social Services Union, Local 668, and the Pennsylvania Employment Security Employees' Association, Local 675, SEIU–AFL–CIO; and the Pennsylvania Social Services Union, Local 668, SEIU, AFL–CIO, the exclusive bargaining representatives for certain other Commonwealth employees subject to Executive Order 1980–18, intervened as petitioners. The three petitioner unions are parties to either a collective bargaining agreement or a memorandum of understanding with the Commonwealth, a public employer under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, as amended, 43 P.S. § 1101.101 *et seq.* (hereinafter, PERA).

On September 3, 1980, Governor Thornburgh issued a three-part Executive Order 1980–18, promulgating a Code of Conduct for certain state officials and employees of the executive branch. Part I of the Code, entitled "Restricted Activities", prohibits certain activities which could present a conflict of interest with public employment. Part III, entitled "Criminal Charges", contains procedures to be followed if persons subject to the Code are charged with criminal conduct. Part II of the Code requires certain executive branch officials and employees to file a "Statement of Financial Interest" disclosing five types of information: (1) in-state and out-of-state real property interests; (2) personal economic interests such as stocks and bonds; (3) interest in any business entity doing business with a government agency; (4) gifts in excess of $100 other than from family members; and (5) certain liabilities. In this action appellees contest only Part II of the Code requiring disclosures of financial information.

Persons subject to the filing requirements are the Governor, Lieutenant Governor, heads of agencies and departments, their deputy secretaries, and those at the level of bureau head and above. Also covered are those persons in sensitive positions such as procurement officers and purchasing agents, employees who administer grants and subsidies, employees who perform or review licensing and inspecting functions, those who render or review decisions concerning

tax liability, as well as chairpersons and members, executive directors, counsel and administrative secretaries of boards and commissions under the Governor's jurisdiction.

Approximately 15,500 out of the 100,000 employees of the executive branch are subject to the filing requirement, including at least 4,500 members of collective bargaining units. Under terms of the Executive Order, the Financial Statements are not to be made available for commercial purposes but will be available upon request for "inspection by accredited reporters employed by general news organizations." Failure to comply with disclosure requirements may be the basis for disciplinary action, including discharge.

The original deadline for filing the Statements of Financial Interest was set for November 3, 1980. On or about October 22, 1980, the Commonwealth began distributing financial disclosure forms to affected employees. Council 13, AFSCME, took the position that the Code's disclosure requirement constituted a violation of the collective bargaining agreement between Council 13 and the Commonwealth. After meeting unsuccessfully with various Commonwealth officials to resolve the problem, on October 28 and November 3, 1980, the Union filed grievances with the Bureau of Labor Relations for the Commonwealth charging Governor Thornburgh with unilaterally altering the terms and conditions of employment without prior discussion or negotiation with Council 13 in violation of Article I, Section 1 and Article XXXVII, Section 6 of its collective bargaining agreement with the Commonwealth. On November 3, 1980, Council 13 filed an unfair labor practice charge with the Pennsylvania Labor Relations Board, charging respondents with violating Sections 803 and 1201(a)(4), (5), and (9) of the PERA, 43 P.S. §§ 1101.803, 1101.1201(a).

On October 31, 1980, appellees commenced this action in Commonwealth Court to enjoin the Commonwealth from requiring state employees under the Governor's jurisdiction to comply with Executive Order 1980–18 and from taking disciplinary action against any employees who refuse to comply. On that same day, the court entered a temporary

restraining order which granted the relief requested. On November 6, 1980, after a hearing on appellees' motion for a preliminary injunction, the court continued its previous order pending final disposition of the case but exempted from its provisions certain higher level state officials and employees.

On appeal the Commonwealth maintains that Commonwealth Court was not justified in enjoining enforcement of Part II of Executive Order 1980–18 since appellees failed to establish the necessary prerequisites for granting a preliminary injunction.[1] Specifically, it contends appellees did not demonstrate a clear and immediate right to relief on the merits and appellees failed to establish that greater injury would result from refusing the injunction than from granting it. In the alternative the Commonwealth argues if, as appellees maintain, the financial disclosure requirements are a matter for collective bargaining, the PLRB has exclusive jurisdiction to consider the charge of unfair labor practice and the courts may not intervene to preserve the status quo pending exhaustion of administrative remedies.

This Court has defined the general standard of review on appeal from the grant or denial of a preliminary injunction as follows:

"[O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor."

1. A preliminary injunction of any kind should be granted only where the rights of the plaintiff are clear, the need for relief is immediate and injunctive relief is necessary to avoid injury which is irreparable and cannot be compensated for by damages. *Township of South Fayette v. Commonwealth*, 477 Pa. 574, 385 A.2d 344 (1978); *Roberts v. School District of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975).

*Roberts v. Board of Directors of School District of Scranton,*
462 Pa. 464, 469, 341 A.2d 475, 478 (1975). *See also Bell v.*
*Thornburgh,* 491 Pa. 263, 420 A.2d 443 (1980).

■ We have deviated from this standard only in those
cases where we were required to review the grant of a
mandatory preliminary injunction. Generally, preliminary
injunctions are preventive in nature and are designed to
maintain the status quo until the rights of the parties are
finally determined. There is, however, a distinction between
mandatory injunctions, which command the performance of
some positive act to preserve the status quo, and prohibitory
injunctions, which enjoin the doing of an act that will
change the status quo. This Court has engaged in greater
scrutiny of mandatory injunctions and has often stated that
they should be issued more sparingly than injunctions that
are merely prohibitory. Thus, in reviewing the grant of a
mandatory injunction, we have insisted that a clear right to
relief in the plaintiff be established. *Roberts v. School*
*District of Scranton, supra; Zebra v. Pittsburgh School*
*District,* 449 Pa. 432, 296 A.2d 748 (1972); *McMullan v.*
*Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971). However,
since the preliminary injunction appealed from in this case is
merely prohibitory, we will not review the merits of the
controversy but will only determine if there were any appar-
ently reasonable grounds to support that action and will
reverse only if no such grounds exist. *Bell v. Thornburgh,*
*supra; Roberts v. School District of Scranton, supra.*

In the Commonwealth Court petitioners made three basic
arguments as to why they were entitled to relief: (1) the
Governor has no inherent or statutory authority to promul-
gate a Code of Conduct and the Code is, in any case,
pre-empted by the Ethics Act;[2] (2) the financial disclosure

2. The Public Officials Ethics Act, Act of October 4, 1978 (No. 170),
P.L. 883, *as amended,* 65 P.S. § 401 *et seq.,* proscribed certain conflict
of interest activities, created a State Ethics Commission, and re-
quired disclosure of certain financial information by candidates for
public office, elected officials, appointed officials, and public employ-
ees with responsibility for taking or recommending official action of
a non-ministerial nature. Pursuant to this Act, the Ethics Commis-

requirements of the Code infringe upon the employees' constitutional right to privacy; (3) the Code violates the Pennsylvania Employe Relations Act and the collective bargaining agreements between the unions and the Commonwealth.

The court did not rule on petitioners' substantive claims but instead premised its grant of injunctive relief on the third of these contentions concluding that petitioners have the right to pursue and exhaust their administrative remedies under their collective bargaining agreements or before the Labor Relations Board before complying with the financial disclosure provisions of the Code of Conduct.

It found as a matter of fact that a collective bargaining agreement exists between petitioners and the Commonwealth; that petitioners have filed a grievance with the Commonwealth pursuant to the grievance and arbitration machinery contained in the collective bargaining agreement; and that petitioners have filed a charge of unfair practice with the Pennsylvania Labor Relations Board charging the Commonwealth with violations of the Public Employe Relations Act.

The court stated that a status quo prohibitory injunction was necessary to allow petitioners an opportunity to challenge the financial disclosure provisions before the established administrative bodies. Further, it recognized that, because the forms require detailed financial information which would be available to the media upon request, petitioners' privacy rights would be waived, for all practical purposes, once the forms were filed. Finally, the court reasoned that provisions of the Ethics Act would adequately protect the public against harm from conflict of interest activities until final disposition of the matter by the Commonwealth Court.

sion promulgated a Statement of Financial Interest to be completed by those persons subject to the Act's disclosure requirements. An undetermined number of employees and officials of the executive branch are covered by the Ethics Act and are required to file Statements of Financial Interest with the Commission.

Thus, while the court refrained from ruling on petitioners' right to relief on the merits, it determined that petitioners have a clear procedural right to pursue their administrative remedies before being required to comply with the Code's financial disclosure requirements and that, in the meantime, the grant of a prohibitory preliminary injunction was necessary to preserve petitioners' privacy right claim.

The Commonwealth contends the preliminary injunction should be vacated since the Code's requirement of financial disclosure is not a required subject of collective bargaining between the Commonwealth and the unions. Thus, it impliedly argues that petitioners have no right to submit the issue to grievance and arbitration proceedings. It maintains the disclosure requirement is a matter of "inherent managerial policy" which Section 702 of the Public Employe Relations Act, 43 P.S. § 1101.702, specifically excludes from the bargaining requirement. Section 702 provides:

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organization structure and selection and direction of personnel. . . ."

In addition, the Commonwealth asserts that its collective bargaining agreement with AFSCME expressly grants to the Commonwealth, as employer, the right to manage its operations in accord with applicable laws.[3] It argues this

---

**3.** Article II of the agreement entitled "Management Rights" provides in its entirety:

"Section 1. It is understood and agreed that the Employer, at its sound discretion, possesses the right, in accordance with applicable law, to manage all operations including the direction of the working force and the right to plan, direct, and control the operation of all equipment and other property of the Employer, except as modified by this or unit agreements.

"Matters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as the functions and programs of Employer, standards of service, its overall budget, utilization of technology,

article constitutes a recognition by AFSCME of the Commonwealth's right to direct its personnel, and the provisions of the Code of Conduct are consistent with that right. The Commonwealth acknowledges that the "management rights" clause does not specifically include the right to promulgate a Code of Conduct but maintains that the Governor has an inherent managerial right under the Constitution to take whatever measures are necessary to insure public confidence in the persons employed by the Commonwealth.[4]

Appellees argue that promulgation of such a Code is not a matter of inherent managerial policy but rather a new term and condition of employment inasmuch as the Code contains penalty provisions which make financial disclosure a condition of employment. Moreover, appellees argue the financial disclosure requirement invades the privacy of employees which was heretofore protected by the collective bargaining agreement. Thus, they contend that Executive Order 1980–18 is a new term and condition of employment, and the Commonwealth's failure to negotiate with the unions over imposition and implementation of this new term properly gave rise to an arbitrable grievance under the agreement.

In our view the threshold issue of whether the Code of Conduct is a matter of inherent managerial policy or is a new term and condition of employment should be determined in the first instance by the PLRB and the arbitrator. Pennsylvania labor policy not only prefers but requires the

the organizational structure and selection and direction of personnel.
"Section 2. The listing of specific rights in this Article is not intended to be nor should be considered restrictive or a waiver of any of the rights of management not listed and not specifically surrendered herein whether or not such rights have been exercised by the Employer in the past.

4. Furthermore, the Commonwealth argues that the Governor is statutorily authorized to supplement the Ethics Act:
"Any governmental body may adopt requirements to supplement this act, provided that no such requirement shall in any way be less restrictive than the act."
Section 11 of the Act, 65 P.S. § 411.

submission to arbitration of public employee grievances arising out of the interpretation of collective bargaining agreements. *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977); *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL–CIO*, 464 Pa. 92, 346 A.2d 35 (1975).[5]

In light of this explicit expression of legislative intent, our courts have been vigilant in protecting the arbitrator's domain. We have ruled that, unless the contract expressly excludes a particular grievance from arbitration, the arbitrator first must be permitted to decide the appropriateness of the matter for arbitration. *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978); *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers, supra.*[6] Furthermore, where the arbitrator has interpreted an agreement in favor of the arbitrability of a grievance, reviewing courts have been reluctant to disagree. *County of Allegheny, supra; Shippensburg Area Education Association v. Shippensburg Area School District*, 42 Pa.Cmwlth. 128, 400 A.2d 1331 (1979).

We are, therefore, in accord with the Commonwealth Court's decision which permits petitioners to exhaust their administrative remedies without filing financial disclosure forms.

**5.** Section 903 of the Public Employe Relations Act, 43 P.S. § 1101.-903, provides as follows:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory . . . [T]he final step [of the grievance procedure] shall provide for a binding decision by an arbitrator. . . ."

**6.** *See also United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). We note that federal labor policy merely favors the submission of disputes to arbitration while Pennsylvania law expressly requires arbitration.

The Commonwealth argues, in the alternative, if the financial disclosure requirement is a required subject of collective bargaining, Commonwealth Court would not have jurisdiction in the first instance to decide if an unfair labor practice has occurred since the PLRB's jurisdiction of the matter is exclusive. Section 1301 of the PERA, 43 P.S. § 1101.1301, states:

"The [Pennsylvania Labor Relations] [B]oard is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this Act. *This power shall be exclusive* and shall not be affected by any other means of adjustment or prevention that may have been or may be established by agreement, law, or otherwise." (Emphasis added.)

Moreover, under Section 1501 of the PERA, 43 P.S. § 1101.1501, the PLRB may petition the Commonwealth Court to enforce its order concerning a Commonwealth employee:

"The board shall except where an employe of the Commonwealth is involved have power to petition the court of common pleas of any county wherein the unfair practice in question occurred, or wherein any person charged with the commission of any unfair practice resides or transacts business, *for the enforcement of such order and for appropriate temporary relief or restraining order* . . . . In the instance of the exception involving the said Commonwealth employes, the board shall file its petition in the Commonwealth Court." (Emphasis added.)

In light of Section 1501, the Commonwealth maintains the General Assembly has designated the PLRB as the party who should seek redress from the courts even where temporary relief is sought. It argues that this procedure insures that a preliminary determination of the merit of a claim will be made by the PLRB before the courts become involved in a labor dispute. Thus, it contends, Commonwealth Court should not have granted injunctive relief on the petition of appellees.

 The Commonwealth correctly states that our case law supports the PLRB's exclusive jurisdiction to determine *whether* an unfair labor practice has occurred. *Hollinger v. Department of Public Welfare*, 469 Pa. 358, 365 A.2d 1245 (1976). We have, however, never held that the PLRB has exclusive jurisdiction to seek a status quo injunction pending final determination by it as to whether an unfair labor practice has occurred.[7]

Moreover, we do not agree with the Commonwealth's interpretation of Section 1501. A close reading of that section, entitled "Judicial Relief", makes it clear that Section 1501 authorizes the PLRB to seek an injunction in connection with its right to seek court enforcement of its order following a determination that an unfair labor practice has occurred. The section requires the PLRB to file with the court a record of the proceedings upon which its order was entered. This requirement clearly indicates that a PLRB determination will precede its petition for injunctive relief. Furthermore, the court is given the power to enter a "decree enforcing, modifying, and enforcing as so modified, or setting aside, in whole or in part, the Order of the Board." This provision also clearly implies that a determination will precede the PLRB's right to invoke the court's jurisdiction.

Section 1401 of the PERA provides additional support for the view that the PLRB cannot claim exclusive authority to seek a status quo injunction prior to making a determination on an unfair practice charge. That section permits the PLRB to apply for injunctive relief before a determination is made, but this power is specifically limited to situations where the unfair labor practice allegedly occurred during

7. In deciding this case we are guided by the recent Third Circuit decision in *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir. 1979), a suit brought under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a). That case held that the District Court had properly enjoined the employer from taking certain actions pending arbitration where (1) the grievance procedure was mandatory under the collective bargaining agreement; (2) the employer was seeking to interfere with and frustrate the arbitration process; and (3) there was a threat of irreparable injury to union members.

collective bargaining procedures set forth in Sections 801 and 802 of the PERA. The instant case does not fall with that category of cases. Given this specific grant of power to obtain pre-hearing injunctive relief in certain cases, the Commonwealth's contention that the PLRB has such power in all cases and that, more importantly, courts of competent jurisdiction have been divested of their traditional equity power, is not persuasive.

We conclude that there were reasonable grounds to support the Commonwealth Court's grant of injunctive relief to petitioners pending arbitration of this dispute, and we will affirm the order of that court.

KAUFFMAN, J., files a dissenting opinion in which FLAHERTY, J., joins.

KAUFFMAN, Justice, dissenting.

The majority correctly recognizes: (1) that "the threshold issue [is] whether the Code of Conduct is a matter of inherent managerial policy or is a new term and condition of employment"; (2) that this issue "should be determined in the first instance by the PLRB..." (Maj.Op. *ante* at 990); and, (3) that "a preliminary injunction *of any kind* should be granted *only where the rights of the plaintiff are clear.*" (Emphasis added) (Maj.Op. *ante* at 987, n.1). It erroneously and inconsistently concludes, however, that the courts of this Commonwealth have "traditional equity power" to intercede in the administrative resolution of this controversy despite a clear refusal by the PLRB to seek judicial intervention and despite appellees' failure to establish the likelihood of their success on the merits.

## I

By virtue of Section 1301 of the Public Employe Relations Act[1] ("PERA"), the Legislature unequivocally has vested

---

1. Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. § 1101.101 *et seq.*

the PLRB with exclusive authority to prevent unfair labor practices: [2]

> The [PLRB] is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this Act. *This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.* (Emphasis added).

14 P.S. § 1101.1301. In *Hollinger v. Department of Public Welfare*, 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976) we concluded that

> ... if a party directly seeks redress of conduct which *arguably* constitutes one of the unfair labor practices listed in Article XII (Section 1201) of the PERA, 43 P.S. § 1101.1201 ... *jurisdiction to determine whether an unfair labor practice has indeed occurred and if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else.* (Emphasis added.)

In a matter such as that now before us, the PLRB has the express power, if it preliminarily determines that it is necessary to do so, to petition the courts "for appropriate temporary relief or restraining order." 43 P.S. § 1101.1501. When Section 1501 of PERA is read in conjunction with Section 1301, it is apparent that the Legislature intended to vest the PLRB, and the PLRB *alone*, with standing to seek injunctive relief in those unfair labor practice disputes where the circumstances require such action.[3] The PLRB here declined to exercise this power, however, despite two requests by

**2.** On November 5, 1980, appellee AFSCME filed an unfair labor practice charge under Article XII of PERA alleging, *inter alia*, that imposition of the Code of Conduct was a failure to bargain collectively in good faith.

**3.** This procedure ensures that the body with recognized expertise in handling labor disputes will make a preliminary determination whether a claim is sufficiently meritorious and the relative harm sufficiently immediate and irreparable to justify court intervention.

appellees that it do so.[4] To allow either employers or employees to circumvent the PLRB by directly petitioning the court for a preliminary injunction under the rubric of invoking its "traditional equity power" would be antagonistic to the detailed administrative scheme promulgated by the Legislature for the orderly resolution of labor disputes.

## II

The majority accurately sets forth the basic prerequisites necessary to sustain a prayer for preliminary injunctive relief:

A preliminary injunction *of any kind* should be granted [1] *only where the rights of the plaintiff are clear*, [2] the need for relief is immediate and [3] injunctive relief is necessary to avoid injury which is irreparable and cannot be compensated for by damages. *Township of South Fayette v. Commonwealth*, 477 Pa. 574, 385 A.2d 344 (1978); *Roberts v. School District of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975). (Emphasis added).

(Maj.Op. *ante* at 987, n.1). Nevertheless, in affirming the order of the Commonwealth Court, which totally ignored the requirement that a plaintiff establish the likelihood of success on the merits, the majority appears to have eliminated this previously critical prerequisite for a preliminary injunction *of any kind*. In the majority's view, since appellees sought a "prohibitory injunction" only to prevent an act that would change the *status quo* rather than a "mandatory injunction" to command performance of some positive act, they were required to demonstrate nothing more than immediate and irreparable harm. This is a dramatic and unwise departure from long established principles of equity, and, if followed, undoubtedly will lead to the unfair imposition of preliminary injunctive relief in many cases where the plain-

4. At the time it filed its unfair labor practice charges, appellee AFSCME "invoked the statute and requested the [PLRB] to seek injunctive relief." Approximately three weeks later, AFSCME made a similar request, this time to the Chairman of the PLRB. Both requests were denied. (Petitioners-Appellees' Brief at 5, 25–26).

tiff easily can demonstrate immediate and irreparable harm, but cannot establish a clear right on the merits.[5]

Obviously recognizing that one of the necessary prerequisites for a preliminary injunction *of any kind* is a showing of likelihood of success on the merits, the PLRB correctly rejected appellees' requests that it seek an immediate restraining order.[6] For the Commonwealth Court to have issued a preliminary injunction under these circumstances was patently erroneous.

Accordingly, I would reverse the order of the Commonwealth Court and dissolve the preliminary injunction.

FLAHERTY, J., joins in Part II of this dissenting opinion.

5. While a mandatory injunction "requires a much stronger case" and should be issued "more sparingly" than a prohibitory injunction, all of the basic prerequisites recognized by the majority to be necessary for a preliminary injunction of any kind must be established before a prohibitory injunction properly may issue. *See Roberts v. School District of Scranton*, 462 Pa. 464, 469–70, 341 A.2d 475, 478 (1975). Thus, "unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded...." *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 771 (1965).

6. In my view, the Governor as chief executive officer of this Commonwealth has the constitutional power, indeed the constitutional duty, to take all reasonable action to eliminate both corruption and the appearance of corruption from the executive branch. To require financial disclosure of those who voluntarily chose to become public employees is merely one reasonable and rational step in the effort to achieve this salutary goal. That integrity in government is not an appropriate subject for collective bargaining should be self-evident.