557 A.2d 805

Fraternal Order of Police Lodge No. 5 and Robert S. Hurst, in his capacity as President, Fraternal Order of Police Lodge No. 5, Appellants *v.* City of Philadelphia and Kevin M. Tucker, individually and in his capacity as Police Commissioner, Philadelphia Police Department, Appellees.

Argued March 8, 1989, before President Judge CRUMLISH, JR. and Judges CRAIG, DOYLE, COLINS, PALLADINO, MCGINLEY and SMITH.

*Robert B. Mozenter,* with him, *Anthony J. Molloy, Jr., Mozenter, Molloy & Durst,* for appellants.

*Ralph J. Teti,* Chief Deputy City Solicitor, for appellees.

OPINION BY JUDGE MCGINLEY, April 17, 1989:

The Fraternal Order of Police, Lodge No. 5, and Robert S. Hurst in his capacity as Lodge President (collectively, FOP), appeal from an order of the Court of Common Pleas of Philadelphia County (court of common pleas) denying the FOP's preliminary injunction to stay the implementation of a urinalysis drug screening program by the Police Commissioner of the City of Philadelphia (Commissioner). We affirm.

The factual and procedural history of this matter is undisputed. On May 10, 1988, the Commissioner issued a memorandum to the FOP indicating his intent to impose a departmental drug policy, Directive 55, with guidelines and procedures for drug screening of officers through urinalysis. It specifically limits testing to situations where: one, there is reasonable suspicion of illegal drug use or drug abuse; and two, as part of routine physical examinations. The reasonable suspicion provision became effective on May 17, 1988; the remainder was to become effective on August 10, 1988.[1]

By the terms of Directive 55, routine exams are defined as those regularly scheduled for the Commis-

---

[1] The "reasonable suspicion" clause of Directive 55 is the only provision before us. *See* note 3 herein.

sioner and all deputy commissioners (yearly) and for promotions, reinstatements, return from extended leaves, transfers and special assignments.[2] On May 13, 1988, the FOP filed a complaint in equity seeking a preliminary injunction to enjoin implementation of Directive 55 on the grounds that it was not embodied in a civil service regulation. On May 16, 1988, after hearing, the court of common pleas denied the preliminary injunction concluding that the FOP had not established the irreparable harm required for the issuance of an injunction and, also, that the FOP failed to demonstrate a likelihood of prevailing on the merits. The FOP filed a petition for reconsideration/application for supersedeas on appeal which the court of common pleas denied on May 17, 1988. On that date, the FOP filed a notice of appeal and an application for stay or injunction pending appeal. In an order dated May 27, 1988, this Court denied the FOP's application for stay pending appeal. The court of common pleas' order is now before us.[3]

In *Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985 (1981), our Supreme Court has defined the general standard of review for the grant or denial of a preliminary injunction. In *Mazzie,* the Court stated:

> '[O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court

---

[2] Directive 55, Urinalysis Policy for Illegal Drug and Controlled Substance Use, Reproduced Record (RR) at R-1a—R-13a.

[3] On November 4, 1988, the FOP filed a Complaint in the U.S. District Court for the Eastern District of PA, at No. 88-8511, (*See* Exhibit "A" of the City's brief.) seeking to preliminarily enjoin the portions of the Directive requiring urinalysis examinations as part of routine physical examinations. That matter is still pending in the district court.

below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.'

*Id.* at 133, 432 A.2d at 988 (1981) quoting *Roberts v. Board of Directors of School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975).

A request for a preliminary injunction of any kind should be granted only where a party shows: (a) a high degree of probability of success on the merits; (b) irreparable injury if the status quo is not maintained; and (c) no adequate remedy at law. *Burchfield v. Department of Education,* 41 Pa. Commonwealth Ct. 121, 399 A.2d 796 (1979).

The Commissioner and the City of Philadelphia (City) argue that the FOP has not established the likelihood that it will prevail on the merits of its appeal and that the court of common pleas acted reasonably.

The FOP argues that a directive promulgated by the Commissioner is not the necessary and proper means under the Philadelphia Home Rule Charter (Charter)[4] to implement a toxic drug screening policy governing the employment conditions of promotion, transfer, reinstatement and continued employment. The FOP relies on *Marion v. Green,* 95 Pa. Commonwealth Ct. 210, 505 A.2d 360 (1986), *petition for allowance of appeal denied,* 514 Pa. 633, 522 A.2d 560 (1987), and *DeVito v. Civil Service Commission,* 404 Pa. 354, 172 A.2d 161 (1961), to support its contention that, absent civil service regulations, the Commissioner is without authority to implement urinalysis drug screenings. The FOP's reliance upon these cases is misplaced.

In *Marion,* this Court addressed the question of whether the Philadelphia Police Department could con-

_____

[4] 351 Pa. Code §§1.1-100—12.12-503.

dition the reinstatement of a returning officer upon his compliance with an unwritten policy that returning officers submit to a polygraph examination to determine continued fitness for duty. This Court held that where the police department was utilizing information-gathering procedures, which it has stated are "standard," a properly promulgated rule is essential. *Marion,* 95 Pa. Commonwealth Ct. at 216, 505 A.2d at 363. The Court concluded that the department could not condition reinstatement upon the submission to a polygraph test when the department had not announced that policy in advance by written regulation. In *DeVito,* our state Supreme Court recognized that nowhere in the Charter, city ordinances, civil regulations or department regulations were there provisions governing the submission by city employees to polygraph tests. Thus, it was established in *Marion* and *DeVito* that prior rulemaking is needed before a police officer can be required to take a polygraph test.

The Commissioner argues that it has complied with the requirements of *Marion* and *DeVito* by promulgating in advance a detailed written notice of its regulation regarding urinalysis testing. The Commissioner cites *McGlone v. City of Philadelphia,* 112 Pa. Commonwealth Ct. 205, 535 A.2d 266 (1987) wherein this Court held that a police department has the authority to order psychiatric exams under police directives. In *McGlone,* the department regulation at issue, Directive 109, concerned commanding officers' requests that officers be given psychiatric examinations and set forth a policy and procedure for such examinations of police officers. This police department regulation was not the subject of a civil service regulation. Our Court reviewed that directive and specifically held that this written notice of its regulation was just the sort of authorization missing in the factual circumstances of *DeVito. McGlone,* 112 Pa. Commonwealth

Ct. at 212, 535 A.2d at 269. Accordingly, the department and the employee were bound by the regulation. We must reject the FOP's interpretation of *Marion* and *De-Vito*.

The FOP argues that Directive 55 affects conditions of employment that Section 7-401 of the Charter, 351 Pa. Code §7.7-401 requires to be addressed by civil service regulation. The FOP argues that specifically, Directive 55 has a controlling effect on continued employment regulated by Sections 7-303, 7-401(p) and 7-401(q) of the Charter, 351 Pa. Code §§7.7-303, 7.7-401(p) and 7.7-401(q); promotions regulated by Section 7-401(e), 351 Pa. Code §7.7-401(e); and transfer and reinstatement regulated by Section 7-401(m), 351 Pa. Code §7.7-401(m).[5] The Charter does provide for civil service regulations governing the promotion, transfer, dismissal and demotion of city employees, but the Charter does not require that all police department procedures to determine qualifications for promotion, transfer, etc., be subject to civil service regulations. The FOP's interpretation is inconsistent with Section 5-200(b) of the Charter, 351 Pa. Code §5.5-200(b), which provides that the Commissioner must be afforded the latitude to articulate department policy and make decisions which are inherently managerial. *McGlone; Marion*. Directive 55 is within the requirements of *Marion*. The FOP has not shown a high degree of probability of success on the merits. *Burchfield*.

Furthermore, the FOP has presented no evidence supporting its contention that either irreparable harm or

---

[5] The FOP also raises the argument that Directive 55 does not meet the requirements of Section 8-406 of the Charter, 351 Pa. Code §8-406, because it has never been submitted to or approved by the Administrative Board. The FOP did not raise this issue before the court below and therefore it is waived pursuant to Pa. R.A.P. 302(a). *See* FOP's Complaint in Equity, RR at R-15a and Notes of Testimony, May 16, 1988, (N.T.), beginning at R-83a.

inadequate legal remedy require a preliminary injunction. *Burchfield*. On the other hand, the Commissioner points out that a grievance procedure exists wherein any police officer whose job status is adversely affected as a result of Directive 55 may arbitrate the decision or appeal to the Civil Service Commission. Relief, in the form of reinstatement and back pay, is available to remedy any injury resulting from disciplinary action under Directive 55. Accord *Cherico v. Board of Supervisors for Newton Township*, 504 Pa. 1, 470 A.2d 97 (1983).

In light of *Marion* and subsequent cases, we affirm the order of the court of common pleas.

### ORDER

AND NOW, this 17th day of April, 1989, the order of the Court of Common Pleas of Philadelphia County, dated May 16, 1988, at No. 2864 May Term, is hereby affirmed.