**EARTH SHARE, Petitioner,**

v.

**OFFICE OF ADMINISTRATION and State Employee Combined Appeal, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1995.
Decided June 1, 1995.

Bradley R. Risinger, for petitioner.

Patricia J. Goldband, Asst. Counsel, for respondents.

Before PELLEGRINI and FRIEDMAN, JJ., and PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Earth Share has filed a Petition for Review of a decision of the Commonwealth's Office of Administration denying Earth Share's participation in the 1994 State Employee Combined Appeal (SECA) Campaign. We affirm.

Earth Share's forerunner organization, the Environmental Federation of America (EFA), is an umbrella workplace solicitation and fund raising organization comprised of some 20 environmental organizations active in the Commonwealth and across the country in efforts to preserve and protect the environment. (Petition for Review, paragraph 5.) SECA, administered by the Commonwealth's Office of Administration, provides an annual campaign to enable State employees to engage in charitable giving through payroll deductions. Procedures for implanting the SECA program are contained in Management Directive 530.23, *as amended,* dated November 6, 1990. It sets forth requirements and standards for umbrella organizations, such as EFA, and constituent agencies seeking admission into SECA.

In 1990, EFA applied to the Office of Administration to participate in the 1991 SECA Campaign. The application was denied by Secretary Joseph L. Zazyczny because EFA does not provide "direct services to persons," as required by the Management Directive. EFA requested reconsideration of the denial or an administrative hearing on the application, and Secretary Zazyczny again responded that EFA did not provide "direct services to persons." He provided examples of what such services would be, which included aid to the poor, scholarships, and assistance to refugees.

At a hearing held on January 16, 1992, EFA's Executive Director, Kalman Stein, testified regarding EFA's constituent agencies and the type of services provided. EFA also offered affidavits from nine constituent agencies to demonstrate that direct services were provided to individuals. The Presiding Officer ruled that the affidavits were hearsay and that EFA had failed to establish by substantial, competent evidence that its constituent agencies provided services that meet the requirements of the Management Di-

rective. EFA filed exceptions to the initial Proposed Report, and the Secretary remanded the matter to the Presiding Officer directing her to consider and give weight to the affidavits submitted by EFA.

Upon reconsideration, the Presiding Officer found that the affidavits provided substantial evidence that EFA and its constituent agencies have an active and necessary program that provides for direct services to persons with regard to the welfare of the public and the persons served, as required by the Management Directive. She concluded that the denial of EFA's participation in the 1991 SECA Campaign was improper. (February 3, 1994 Proposed Report (Proposed Report), P. 9.) Neither party appealed this determination.

Earth Share (which became EFA's official name as of February 1991) also applied for participation in the 1994 SECA Campaign. At the time of the application in October 1993, the same Management Directive was in effect as at the time of 1991 application, requiring that applicant groups provide direct services to persons. On February 25, 1994, the Commonwealth revised Management Directive 530.23 to specifically exclude from SECA campaigns applicant groups involved with natural resources and wildlife management or policy, and environmental management or policy. On March 10, 1994, Secretary Zazyczny informed Earth Share that because it did not provide direct services to persons as defined under the revised Management Directive, its 1994 Campaign application had been denied. Earth Share asked for reconsideration of the decision, and received a final denial of participation in the 1994 Campaign on April 25, 1994.

Earth Share filed a Petition for Review with this Court on May 25, 1994, and a Petition for Special Relief in the nature of a preliminary injunction on June 24, 1994.[1] After a hearing held on July 28, 1994, this Court denied Earth Share's Petition for Special Relief, concluding that Earth Share failed to meet the criteria set forth in *Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985 (1981), for granting a preliminary injunction. Earth Share's Petition for Review is now before the Court for disposition.[2]

The relevant portion of the Management Directive in effect at the time EFA applied to participate in the 1991 SECA Campaign provided as follows in pertinent part:

(3) Standards for umbrella organizations and constituent agencies.

(a) Program. The umbrella organization and each constituent agency shall have an active and necessary program which provides for direct services to persons, with particular regard to the welfare of the public and the person served; for consultation and cooperation with established agencies in the same or related fields; and for efficient operations.

(Management Directive, Section 6a(3)(a).) An "umbrella organization" was defined as an organization that had been designed to serve as the agency in SECA for a group of constituent agencies. (Management Directive, Section 4e.) A "constituent agency" was an entity that provided people with benevolent, educational, philanthropic, humane, or eleemosynary services. (Management Directive, Section 4f.)

The phrase "direct services" was not defined in the Management Directive. As recognized by the Presiding Officer, however, the types of services contemplated can be inferred from the definition of constituent agency, quoted above. Even so, the Management Directive did not list or exclude any specific services but only mentioned the broad scope of types of services that could be offered in order to qualify. Although the Office of Administration did provide a list of examples to Earth Share, we agree with the Presiding Officer that that list was exemplary only and not exhaustive of the broad spectrum of services that could be provided.

1. We denied the Petition for Special Relief, without prejudice, on June 30, 1994, stating that Earth Share must first formally ask the Commonwealth to grant the special relief requested before the Court would consider the issue. The Commonwealth declined to afford Earth Share the relief requested, and on July 14, 1994, Earth Share refiled a revised Petition for Special Relief.

2. The Environmental Fund for Pennsylvania has filed an amicus curiae brief in support of Earth Share's Petition.

In fact, the specific services provided by EFA's constituent agency were not excluded by the Management Directive, and, as correctly noted by the Presiding Officer, the Management Directive, as written, controlled until amended. (Proposed Report at 8.) As concluded by the Presiding Officer:

> As a matter of law, the services provided by the EFA constituent agencies fall within the broad spectrum of benevolent, educational, philanthropic, humane, and eleemosynary types of services. Since these services were provided to persons or groups of persons without any intervention between a service and the persons served, the program standard of the directive was met.

(Proposed Report at 8–9.)

On February 8, 1994, Secretary Zazyczny circulated a copy of the Proposed Report and Recommended Order, which would reverse the action of the Office of Administration in denying EFA's participation in the 1991 SECA Campaign, and advising counsel for the Office of Administration that exceptions could be filed within thirty days in accordance with 1 Pa.Code § 35.211. No exceptions were filed, and pursuant to 1 Pa.Code §§ 35.213 and 35.226, such lack of action constituted a waiver of objections to the Proposed Report, and the Proposed Report was deemed a final order by operation of law.

Accordingly, we agree with the Presiding Officer that the denial of EFA's participation in the 1991 SECA Campaign was improper. However, we do not agree with Earth Share that it was automatically entitled to participate in the 1992 and 1993 Campaigns.[3] The issue presently before this Court is the decision of the Office of Administration denying Earth Share the opportunity to participate in the *1994* SECA Campaign. (*See* Earth Share's Petition for Review, paragraph 2.)

Management Directive 530.23 was amended on February 25, 1994, following the Presiding Officer's Proposed Report. The amended Section 6(3) reads as follows:

(3) Standards for umbrella organizations and funds and constituent agencies.

(a) Program. The umbrella organization or fund and each constituent agency shall have an active and necessary program which provides for:

> . . . .

*3* Direct health and welfare services to persons, with particular regard to the welfare of the public and the persons served and meeting all the following criteria.

*a* The services provided by the agency must directly benefit human beings.

*b* The services provided must consist of care, education, financial assistance, or medical research for purposes such as human health or social adjustment and rehabilitation; relief for victims of natural disaster and other emergencies; assistance to those who are impoverished and in need of food, shelter, clothing, and other basic human welfare services.

*c* The primary focus of the agency must not be one, or a combination of the following, which are not considered direct health and welfare services (this list is illustrative only and not exhaustive of the types of activities which are not direct human health and welfare services):

> . . . .

*(4)* Activities which relate to natural resources or wildlife management or policy.

*(5)* Activities which relate to environmental management or policy.

The Office of Administration relied upon the revised Management Directive in denying Earth Share's application to participate in the 1994 SECA Campaign. By letter dated April 25, 1994, Deputy Secretary Charles T. Sciotto wrote to Earth Share as follows:

> This determination is completely consistent with the decision rendered by the hearing officer, who based her decision, at least in part, on the fact that the Management Directive did not define "direct services." However, the hearing officer also stated that the Management Directive as

---

**3.** There is nothing in the record to indicate that Earth Share made any attempt to apply for admission for those campaigns, and even if it had been accepted for 1991, it would have had to comply with the requirements of the Management Directive for participation in subsequent campaigns. (*See* Management Directive, Section 6(6).)

written controlled until such time as it is amended. As you know, the Management Directive has been amended, and now defines "direct services." The review of Earth Share's application revealed that your agency does not meet this requirement.

■ Earth Share argues that this denial, based upon the "untimely" revisions to the Management Directive, deprived it of due process. Earth Share claims that its application for the 1994 SECA Campaign should have been governed by the Management Directive that was in effect at the time of the application in October of 1993, containing the standards applied by the Presiding Officer, and not the revised version. We do not agree.

The procedures for new applications for umbrella organizations provide that the Advisory Committee of Participating Umbrella Organizations (Admission Committee) "shall vote to recommend, to accept, or reject the application based solely on the criteria set forth in this Management Directive." (Section 6a(4)(c).) The SECA Coordinating Committee then reviews the recommendation and makes a decision on the application "based solely on the criteria set forth." (Section 6(4)(d).) The Secretary then notifies the applicant organization of the Commonwealth's decision. (Section 6(4)(e).)

In this case, there is nothing in the record evidencing the process followed by the Commonwealth in considering Earth Share's application until the denial forwarded by Secretary Zazyczny on March 10, 1994. In his letter, the Secretary advised Earth Share that both the Admission Committee and the Coordinating Committee had recommended that the application be denied because Earth Share did not provide "direct services to persons." The Admissions Committee would have relied upon the original Management Directive and the standards and procedures contained therein in reaching its recommendation.[4] The Coordinating Committee, however, was not required to make its recommendation to the Secretary until February

28, three days after the revised Management Directive went into effect.

What is clear from the record is that at the time the Coordinating Committee made its decision, and the Secretary notified Earth Share of the denial, the revised Management Directive, containing the new definition of "direct services," was applicable. There is nothing in either version of the Management Directive which prohibits revisions or dictates at what stage of the application process those revisions may take effect. To the contrary, the final provision of the Management Directive, identical in both versions, states as follows:

**Periodic review.** To provide for updating and needed changes in the SECA procedures, this directive will be reviewed periodically and amended as deemed necessary by the Secretary.

(Management Directive, Section 6e.) Accordingly, we conclude that the Secretary was acting within his discretion in revising the Management Directive to address the concerns expressed by the Presiding Officer and in relying upon the revised Management Directive in denying Earth Share's application for participation in the 1994 SECA Campaign.

■ Earth Share contends that the Commonwealth's actions in revising the Management Directive to expressly exclude environmental groups constituted an unconstitutional viewpoint-based restriction of participants in SECA campaigns. Citing *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), a case involving SECA's counterpart in the federal government, Earth Share asserts that the existence of reasonable grounds for limiting access to a nonpublic forum (such as the SECA campaigns) will not save a regulation that is in reality a facade for viewpoint-based discrimination. We are satisfied in this case that the exclusion of environmental groups such as Earth Share was not viewpoint-based discrimination, but a reasonable means for the Commonwealth to

---

4. Under Section 6a(4)(c) of the Management Directive, the Admissions Committee is to make its recommendation on an application by January 31, which would have been prior to the effective date of the revised Management Directive.

better define and limit what it considers to be "direct services to persons." As noted by the Supreme Court in *Cornelius*, "[t]he Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Id.* at 808, 105 S.Ct. at 3452 (emphasis in original).

The revised Management Directive contains several new provisions which specifically define what had been loosely referred to, in the original Management Directive, as "direct services to persons." For example, the umbrella organization must be one that provides direct health and welfare services to persons, and those services must directly benefit human beings. (*See* Section 6a(3)(a).) Moreover, the revised Management Directive also explicitly excludes organizations other than environmental groups, such as organizations whose primary focus is legal advocacy, political advocacy, or sectarian activities. (Section 6a(3)(a)3c(1)–(3).)

It is clear to us that the Commonwealth's revisions to the Management Directive reflect an attempt to clarify the meaning of "direct services," responding to the Presiding Officer's concerns that the term was not better defined. The revised Management Directive contains new language to effect this clarification, and specifically excludes from the definition five specific categories of activities which it determined not to be "direct services to persons" (legal advocacy, political advocacy, sectarian activities, activities which relate to natural resources or wildlife management or policy, and activities which relate to environmental management or policy). The Commonwealth has not singled-out Earth Share or other environmental advocacy groups by way of any viewpoint-based discrimination.

Accordingly, we affirm the decision of the Office of Administration to deny Earth Share's participation in the 1994 SECA Campaign.[5]

5. In so holding, we need not address Earth Share's claim for damages resulting from the denial of its participation in the 1994 Campaign. We also will not address the claim for damages for the years 1991, 1992, and 1993. As previously discussed, Earth Share never applied for ad-

*ORDER*

AND NOW, this 1st day of June, 1995, the decision of the Office of Administration denying Earth Share's participation in the 1994 SECA Campaign is affirmed.

mission to the 1992 and 1993 Campaigns. With regard to the 1991 Campaign, even though we agree with the Presiding Officer that the denial was improper, we do not believe that the issue of the 1991 Campaign is properly before this Court.