# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, a political    :
subdivision of the    :
Commonwealth of Pennsylvania    :
    :
            v.    :   No. 101 C.D. 2021
    :   Argued:  June 7, 2021
The Cracked Egg, LLC,    :
                Appellant    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED:  July 23, 2021

The Cracked Egg, LLC (Appellant), which operates a restaurant, the Crack'd Egg (Restaurant), in Pittsburgh, Pennsylvania, pursuant to a permit issued by the Allegheny County Health Department (ACHD), appeals from the February 3, 2021 Order of the Court of Common Pleas of Allegheny County (trial court) that granted the Emergency Motion for Preliminary Injunction (Emergency Motion) filed by the County of Allegheny, a political subdivision of the Commonwealth of Pennsylvania (County).  ACHD had suspended Appellant's permit (Permit) and ordered the immediate closure of the Restaurant on August 11, 2020 (Suspension and Closure Order), based on Appellant's refusal to operate in accordance with certain orders of the Pennsylvania Department of Health (DOH), Governor Tom Wolf (Governor),

and ACHD requiring the universal use of face coverings and limiting the occupancy of restaurants at 25%. After learning that Appellant continued to operate the Restaurant with a suspended permit and in violation of the above orders, the County, through ACHD, filed a Complaint in Equity and Enforcement Action (Complaint) and the Emergency Motion on September 16, 2020. Following a three-day evidentiary hearing, the trial court issued a memorandum opinion and order on February 3, 2021, granting the Emergency Motion. Appellant immediately filed a notice of appeal to this Court challenging the issuance of the preliminary injunction.

## I. Background

On March 6, 2020, the Governor issued a Proclamation of Disaster Emergency (Proclamation) formally declaring a state of emergency in the Commonwealth of Pennsylvania (Pennsylvania) in response to the global pandemic caused by the novel coronavirus disease (COVID-19) pursuant to Section 7301(c) of the Emergency Management Services Code (Emergency Code), 35 Pa.C.S. § 7301(c). Thereafter, the Governor implemented numerous orders in an effort to mitigate and stop the spread of COVID-19, including closing non-essential businesses, closing restaurants and bars for in-person dining, limiting the size of gatherings, and directing citizens to stay at home. In May 2020, a phased reopening of Pennsylvania's businesses began, with restaurants and bars reopening with increasing capacity once counties reached the "Yellow phase" and "Green phase." (Trial Court Memorandum Opinion (Trial Ct. Op.) at 5.) The Governor renewed the Proclamation for an additional 90 days each on June 3, 2020, August 31, 2020, and February 19, 2021.[1] By the end of June and early in July 2020, Pennsylvania experienced an uptick in daily COVID-19 cases. In response, DOH, through then-

---

[1] The Governor renewed the Proclamation again on May 20, 2021.

Secretary of Health Rachel Levine, issued a universal face covering order on July 1, 2020, and the Governor issued a July 16, 2020 order "Directing Targeted Mitigation Measures," which incorporated DOH's face covering order and limited restaurants to the lesser of 25% of the fire code stated maximum occupancy for indoor dining or 25 persons including staff (COVID-19 Control Measure Orders). ACHD issued its own order on July 2, 2020, closing bars, restaurants, and casinos and calling for the cancellation of activities or events attended by more than 25 people in the County for 1 week.

Upon receiving complaints about Appellant's operation of the Restaurant, ACHD sent employees to investigate on July 1, July 28, August 5, and August 7, 2020. Each time, public-facing employees were observed not wearing masks and customers were observed not wearing masks upon entering the Restaurant. After each visit, the ACHD employee met with Appellant's staff and offered guidance on complying with the COVID-19 Control Measure Orders. ACHD sent notices to Appellant reflecting the violations and the ability to request a hearing. ACHD conducted another inspection on August 11, 2020, which revealed continued noncompliance with the COVID-19 Control Measure Orders. Concluding that Appellant's ongoing noncompliance was an imminent danger to the public health, ACHD immediately issued the Suspension and Closure Order, suspending the Restaurant's Permit and closing the Restaurant pursuant to Section 337.1 of Article III "Food Safety" of the Allegheny County Health Department Rules and Regulations, ALLEGHENY COUNTY HEALTH DEPARTMENT RULES AND REGULATIONS, Art. III, § 337.1. The Suspension and Closure Order stated that "[f]ailure to close will result in immediate initiation of an enforcement action[,]" required that notice of the Permit suspension "be posted in plain view and . . . not be removed or

3

concealed[,]" and provided information about asking "for a hearing if [Appellant was] aggrieved by the" suspension. (Original Record, Complaint (Compl.) Exhibit (Ex.) F.) It also advised Appellant to "correct all emergency violations" and submit a request for inspection and reinstatement of the Permit. (*Id.*) Appellant did not appeal the Suspension and Closure Order, or any of the other notices, and did not submit either a COVID-19 compliance plan or request for reinstatement of the Permit.

ACHD became aware, via social media postings, that Appellant intended to reopen the Restaurant and sent a warning letter on August 21, 2020, that such action would be a violation of Section 337.1 of Article III. (*Id.* Exs. G-H.) Between August 24, 2020, and August 28, 2020, August 31, 2020, and September 4, 2020, and on September 10, 2020, ACHD employees performed compliance inspections to determine if Appellant was complying with the Suspension and Closure Order. These visits confirmed that Appellant continued to operate the Restaurant with a suspended Permit in violation of the Suspension and Closure Order. They also revealed that the notice advising the public of the closure of the Restaurant had been covered and then removed.

Based on the above facts, the County filed the Complaint and Emergency Motion on September 16, 2020, averring that Appellant was not complying with the COVID-19 Control Measure Orders, was operating the Restaurant with a suspended permit, and was causing an imminent danger to public health. The County sought compliance with the COVID-19 Control Measure Orders (Count 1) and enforcement of its Suspension and Closure Order (Count 2). The Emergency Motion incorporated all of the facts and exhibits from the Complaint and asserted that these facts, along with the significant public health hazard caused by exposure to and

4

spread of COVID-19, met the six requirements for obtaining a preliminary injunction.[2, 3]

Appellant filed an Answer and Affirmative Defenses to the Complaint[4] essentially admitting the underlying factual allegations but denying that it operated the Restaurant in violation of the law. It asserted that the COVID-19 Control Measure Orders were not "appropriate" controls for COVID-19, challenging the efficacy of face masks. (Answer ¶ 15.) Appellant also asserted that those orders were not enforceable because DOH and the Governor did not comply with the act commonly known as the Commonwealth Documents Law,[5] the Regulatory Review Act,[6] and the Commonwealth Attorneys Act[7] in issuing the orders. (*Id.* ¶¶ 15-21.) Appellant further asserted that enforcement of the COVID-19 Control Measure

---

[2] A party seeking a preliminary injunction is required to show that: (1) "an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; (2) "greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; (3) "a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; (4) "the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, [the petitioner] must show that it is likely to prevail on the merits"; (5) "the injunction it seeks is reasonably suited to abate the offending activity"; and (6) "a preliminary injunction will not adversely affect the public interest." *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003).

[3] Appellant filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania (District Court) on September 18, 2020. On October 7, 2020, the District Court remanded the matter to the trial court. (Trial Ct. Op. at 2.) Almost immediately thereafter, Appellant filed a Chapter 11 Bankruptcy Petition, and on October 15, 2020, Appellant filed a Notice of Removal to the United States Bankruptcy Court for the Western District of Pennsylvania (Bankruptcy Court). (*Id.*) The Bankruptcy Court granted the County's Motion for Relief from the Automatic Stay on January 7, 2021, and remanded the matter to the trial court. (*Id.*)

[4] The Answer and Affirmative Defenses was filed in the Bankruptcy Court. (Reproduced Record (R.R.) at 48a-59a.)

[5] Act of July 31, l968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602; 45 Pa.C.S. §§501-907.

[6] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.14.

[7] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 – 732-506.

5

Orders would be contrary to *County of Butler v. Wolf*, 486 F. Supp. 3d 883 (W.D. Pa. 2020).[8] (*Id.* ¶¶ 17-21.) Appellant asserted that, because the COVID-19 Control Measure Orders were not valid, ACHD's Suspension and Closure Order was likewise not valid. Appellant also maintained that the Suspension and Closure Order was invalid because it was entered without prior notice and a hearing, thereby denying Appellant due process. (*Id.* ¶¶ 37, 40.) Consistent with its Answer, Appellant raised affirmative defenses relating to the efficacy of wearing masks, the validity of the COVID-19 Control Measure Orders, and the constitutionality of those orders, which violated the separation of powers doctrine and Appellant's substantive due process and equal protection rights. (*Id.* ¶¶ 50-59, 63-67.)

## II. Proceedings Before the Trial Court

### A. Evidentiary Hearing

The trial court held a remote, three-day evidentiary hearing on the Emergency Motion. In support of the preliminary injunction, the County presented the testimony of: Dr. LuAnn Brink, ACHD's chief epidemiologist and deputy director, who was accepted as an expert in epidemiology; the Program Operations Manager of ACHD's Food Safety Program; and the ACHD employees who inspected the Restaurant in July, August, and September 2020. Respectively, these witnesses testified about: the epidemiology of COVID-19; the spread of COVID-19 in general and in the County; the efficacy of masking and social distancing on reducing the spread of COVID-19; ACHD's response to the pandemic; ACHD's rules, regulations, and procedures for inspecting and closing restaurants; and the investigation of Appellant's operation of the Restaurant.

---

[8] Appellant cites this decision as "*County of Allegheny v. Wolf.*" (Answer ¶ 17.)

Appellant offered the testimony of: Dr. Debra Bogen, ACHD's Director, as on cross-examination; Kimberly Waigand, Appellant's co-owner; David McGill, a restauranteur; Kelly Miller, who was accepted as an expert in the Occupational Safety and Health Administration's (OSHA) requirements for personal protective equipment (PPE), such as masks, in the workplace; and Dr. James Lyons-Weiler, who was accepted as an expert relating to designing research studies, lab techniques and polymerase chain reaction or PCR testing, and data analysis. Respectively, these witnesses testified about: ACHD's response to COVID-19; the effect COVID-19 and various mitigation orders have had on the Restaurant and why Appellant will not require its employees or customers to wear masks; the effect COVID-19 and the mitigation efforts have had on the restaurant industry generally; how OSHA's requirements for mandating PPE in the workplace would not be met by requiring face masks for employees; and the potential for high numbers of false positives for COVID-19 due to the particular type of test being used.

*B. Trial Court's Memorandum and Order*

The trial court issued a Memorandum Opinion and Order granting the Emergency Motion. The trial court set forth the legal standard for granting injunctive relief and then addressed the parties' arguments as to whether such relief was appropriate under these circumstances.

1. <u>Appellant's Constitutional Claims</u>

The trial court first discussed the constitutionality of the COVID-19 Control Measure Orders, as well as orders issued by the ACHD requiring compliance with the same. The trial court concluded that these orders were constitutional because they were "rationally related to the legitimate government interest of protecting the

7

citizens of Allegheny County from the spread of COVID-19." (Trial Ct. Op. at 7.) The trial court acknowledged Appellant's reliance on the United States District Court for the Western District of Pennsylvania's (District Court) decision in *County of Butler*, which held that the mitigation orders initially issued by the Governor and DOH imposing congregate gathering limits violated the right of assembly guaranteed by the First Amendment to the United States Constitution, U.S. CONST. amend. I. That court also held that the stay-at-home and business closure components of these orders, given their ongoing and open-ended nature, violated the rights of due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV. The trial court found that reliance misplaced, distinguishing *County of Butler* by noting that the District Court focused on the stay-at-home and business closure or gathering restriction provisions of these orders and did not address the constitutionality of the mask and social distancing mitigation measures at issue here. Perhaps more importantly, the trial court observed that the United States Court of Appeals for the Third Circuit stayed the District Court's decision by order dated October 1, 2020. *See County of Butler v. Governor of Pa.*, No. 20-2936, 2020 WL 5868393 (3d Cir., Oct. 1, 2020).

The trial court disagreed with the District Court's decision in *County of Butler* to the extent that it concluded that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), was no longer good law. In *Jacobson*, the United States Supreme Court upheld a statute empowering municipal boards of health to require residents to be vaccinated for smallpox and afforded substantial deference to the discretion of state and local officials to exercise their police power in matters of public health. The trial court described *Jacobson* as a "forerunner of our present rational basis test," and while

8

claims involving fundamental rights, such as the First Amendment right to religious liberty, may require stricter levels of review pursuant to *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), Appellant's claims did not fall within this level of review. (Trial Ct. Op. at 10-13.) The trial court analyzed the mitigation measures instituted by DOH and the Governor under the rational basis test and found that such measures were rationally related to a legitimate government interest, namely the protection of public health during a pandemic. The trial court specifically rejected Appellant's claims that the mitigation measures violated its rights to substantive due process and equal protection, relying upon our Supreme Court's decision in *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 876 (Pa. 2020), a case addressing an Executive Order issued by the Governor on March 19, 2020, compelling the closure of the physical operations of all non-life-sustaining business to reduce the spread of COVID-19. The trial court stated that the Supreme Court's numerous holdings addressing the same or similar arguments raised in the matter *sub judice* were binding on the court. In particular, the Supreme Court specifically held in *DeVito* that the Governor had the authority to issue the order because the pandemic qualified as a natural disaster under the Emergency Code, and that the Governor's order: (1) was a proper exercise of the police power; (2) did not violate the doctrine of separation of powers; (3) did not constitute a taking without compensation; (4) did not deprive non-life-sustaining business owners of procedural due process under the United States or Pennsylvania Constitutions; (5) did not violate the Equal Protection clauses of the United States or Pennsylvania Constitutions; and (6) did not violate the rights to free speech and assembly under

9

the United States or Pennsylvania Constitutions.[9]  The trial court further rejected Appellant's claims regarding DOH's and the Governor's purported noncompliance with mandatory rule-making procedures, citing *DeVito*, 227 A.3d at 886, because the Emergency Code authorized the Governor to "supersede[] and suspend[] the provisions of any regulatory statute prescribing the procedures for the conduct of Commonwealth business in dealing with the emergency."[10]  (Trial Ct. Op. at 13-14.)

### 2. Requirements for a Preliminary Injunction

The trial court concluded that ACHD had met each of the prongs necessary for the issuance of a preliminary injunction.  As to the first prong, that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately

---

[9] The First Amendment to the United States Constitution provides, in pertinent part, that "[c]ongress shall make no law . . . abridging the freedom of speech, . . . or the right of the people to peaceably assemble . . . ."  U.S. CONST. amend. I.  Respectively, sections 7 and 20 of article I of the Pennsylvania Constitution state, in relevant part, "every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty," and "citizens have a right in a peaceable manner to assemble together for their common good."  PA. CONST. art. I, §§ 7, 20.

[10] Additionally, the trial court found independent authority for the COVID-19 Control Measure Orders under Section 2102 of the Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 532, and Section 12012 of the Local Health Administration Law (Local Health Law), 16 Pa.C.S. § 12012, to abate, mitigate, and prevent public health combat hazards.  Section 2102(a) of the Administrative Code authorizes DOH to "protect the health of the people of this Commonwealth[] and to determine and employ the most efficient and practical means for the prevention and suppression of disease[.]"  71 P.S. § 532(a).  Section 2102(c) empowers DOH to order the abatement or removal of nuisances that are detrimental to the public health, as well as to enforce quarantines where the nuisance involves a disease.  71 P.S. § 532(c).  Per Section 12012(c) of the Local Health Law, county departments of health are authorized to "enter and inspect . . . any places or conditions whatsoever within [its] jurisdiction . . . for the purpose of enforcing health laws, rules[,] and regulations, . . . and for the purpose of examining for[] and abating nuisances detrimental to the public health."  16 Pa.C.S. § 12012(c).  Once a nuisance is discovered, Section 12012(d) of the Local Health Law authorizes the county health director to take action to abate the nuisance.  16 Pa.C.S. § 12012(d).  These provisions, the trial court held, fully authorized ACHD to take steps to abate the threat of COVID-19 in the County.

compensated by damages, the trial court found this prong was met by the need to protect the public health of all citizens of the County from the COVID-19 pandemic. The trial court refused to find that evidence of 100% mask efficacy or outbreaks at the Restaurant was required to establish immediate and irreparable harm. As to the second prong, that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction would not substantially harm other interested parties in the proceedings, the trial court credited Ms. Waigand's and Mr. McGill's testimony regarding the economic impact that mitigation measures had on individuals and local business owners. However, the trial court concluded, based on Dr. Brink's testimony,[11] that the risks of exposure to COVID-19 and its ability to spread exponentially represented a greater injury if the request for an injunction was denied.

As to the third prong, the trial court concluded that a preliminary injunction would properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. As to the fourth prong, that the County is likely to prevail on the merits, the trial court referenced its prior conclusions that the orders issued by DOH, the Governor, and the ACHD were rationally related to a legitimate government interest and were not violative of Appellant's constitutional rights. As to the fifth prong, the trial court found that the relief sought by the County was reasonably suited to abate Appellant's offending activity. As to the sixth and final prong, that a preliminary injunction will not adversely affect the public interest, the

---

[11] Although the trial court did not expressly state that it found the testimony of Dr. Brink and Dr. Bogen credible, it is apparent from the trial court's opinion that it did so because its findings and conclusions in support of its grant of the preliminary injunction were based on that testimony.

trial court found the contrary was true, *i.e.*, that the public interest requires the issuance of an injunction.

For these reasons, the trial court granted the Emergency Motion. The trial court directed Appellant to submit to the ACHD a COVID-19 compliance plan for operation of the restaurant, to cease and desist from violating the ACHD's August 11, 2020 Suspension and Closure Order by willfully opening and operating the Restaurant, and to cease and desist from ignoring its obligations under the Suspension and Closure Order.

### C. Trial Court's Supplemental Opinion

After filing the appeal with this Court, Appellant, at the trial court's direction, filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), in which it raised 12 allegations of error. While many of the issues were addressed in the Memorandum Opinion, the trial court issued a Supplemental Opinion to clarify any suggested errors that were not addressed in the prior opinion.

In response to Appellant's contention that the trial court erred by distinguishing *County of Butler* and relying on *Jacobson*, the trial court acknowledged that *Jacobson* "may need some constitutional 'tweaking,'" when it came to fundamental rights, but it remained good law and was merely "a prescient articulation of [the] current rational basis test that should be applied in analyzing government action during a pandemic." (Trial Ct. Supplemental (Suppl.) Op. at 3-5.) The trial court noted the restrictions here were far less intrusive than the smallpox vaccine mandate at issue in *Jacobson* and were a valid exercise of the police power. As to the trial court's reliance on *DeVito*, which Appellant claimed was erroneous because of that decision's proximity to the beginning of the pandemic, the trial court

12

explained *DeVito*'s holdings were reaffirmed by the Supreme Court in *Wolf v. Scarnati*, 233 A.3d 679, 704 (Pa. 2020), and both remain good, binding precedent. The trial court further rejected Appellant's contention that it erred in relying on *DeVito* for the proposition that the Governor had the ability to supersede and suspend mandatory rule-making procedures, which allowed him to "rule by fiat" and violate the separation of powers doctrine, reasoning that the Supreme Court rejected similar claims in *Scarnati*, 233 A.3d at 696.[12]

In response to Appellant's evidentiary based challenges, namely that there was insufficient evidence to establish that Appellant's noncompliance was a nuisance and that mitigation efforts were not appropriate, the trial court acknowledged the various disputes over the efficacy of these measures but held its findings were supported by Dr. Brink's testimony. Citing that testimony, the trial court held that Appellant's argument that masks may not be "100% protection for the wearer" "ignore[d] the protection masks afford[] the public in general[,]" similar to the prohibition on indoor smoking to avoid the impact of passive smoke inhalation. (Trial Ct. Suppl. Op. at 9.)

## III. Appeal to this Court

### A. General Legal Standards

Before the Court is an appeal of the grant of preliminary injunctive relief; the merits of the Complaint have not yet been adjudicated. An appellate court reviews

---

[12] Pointing to the language in Section 5 of the Disease Prevention and Control Act of 1955 (Disease Control Act), Act of April 23, 1956, P.L. (1955) 1510, 35 P.S. § 521.5, which the trial court acknowledged did not authorize masking and social distancing but did authorize the imposition of "any other control measure," the trial court concluded that this section authorized methods less intrusive than those specifically authorized, which were far more restrictive than requiring masks and social distancing. Based on this language, the trial court rejected Appellant's contention that it erred in finding other statutory support for ACHD's actions here.

13

an order granting or denying a preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). Under this standard, the appellate court is **not** to inquire into the controversy's merits but examines the record "to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (quoting *Roberts v. Bd. of Dirs. of Sch. Dist. of Scranton*, 341 A.2d 475, 478 (Pa. 1975)); *see also Appeal of Little Britain Twp. from Decision of Zoning Hearing Bd.*, 651 A.2d 606, 611 (Pa. Cmwlth. 1994) ("A preliminary injunction [does not] serve as a judgment on the merits since by definition it is a temporary remedy granted until that time when the party's dispute can be completely resolved."); *Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015) ("The preliminary injunction proceeding is distinct from the final hearing on the merits."). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Roberts*, 341 A.2d at 478. "[T]he facts are to be viewed in the light most favorable to the winner at the trial court level." *Com. ex rel. Corbett v. Snyder*, 977 A.2d 28, 41 (Pa. Cmwlth. 2009).

"A preliminary injunction is an extraordinary remedy[.]" *Hart v. O'Malley*, 676 A.2d 222, 223 n.1 (Pa. 1996). There are six "essential prerequisites" that a party seeking a preliminary injunction must establish for a court to issue the injunction. *Summit Towne Centre, Inc.*, 828 A.2d at 1001 (internal quotation marks omitted). As described by our Supreme Court, the party seeking the preliminary injunction bears a heavy burden of proof and is required to show that: (1) "an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; (2) "greater injury would result from refusing an

14

injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; (3) "a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; (4) "the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, [the petitioner] must show that it is likely to prevail on the merits"; (5) "the injunction it seeks is reasonably suited to abate the offending activity"; and (6) "a preliminary injunction will not adversely affect the public interest." *Id.* If the preliminary injunction is a mandatory one, meaning it directs "the performance of some positive act to preserve the status quo," rather than a prohibitory one, which seeks to "enjoin the doing of an action that will change the status quo[,]" the plaintiff must establish "a clear right to relief[.]" *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981). This is because mandatory preliminary injunctions are more extraordinary and should be granted more sparingly than prohibitory preliminary injunctions. *Id.* Reasonable grounds exist to support the denial of a preliminary injunction where a trial court has properly found that **any one** of the six "essential prerequisites" is **not** satisfied. *Summit Towne Centre, Inc.*, 828 A.2d at 1001. "Because the grant of a preliminary injunction is a harsh and extraordinary remedy, it is to be granted only when and if **each** [factor] has been fully and completely established." *Pa. AFL-CIO by George v. Commonwealth*, 683 A.2d 691, 694 (Pa. Cmwlth. 1996) (emphasis in original).

### B. Discussion

Initially, we recognize that the appeal before us is from the Order granting a preliminary injunction, and such an order does **not** "serve as judgment on the merits since by definition it is a temporary remedy granted until that time when the

15

part[ie]s' dispute can be completely resolved." *Little Britain Twp.*, 651 A.2d at 611. Thus, although the trial court analyzed the arguments pertaining to the constitutionality and validity of the COVID-19 Control Measure Orders and ACHD's authority to issue the Suspension and Closure Order, we view this analysis as **not** "serv[ing] as judgment on the merits," *id.*, but addressing whether the County met its burden of establishing that "the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, showing that it is **likely to prevail on the merits**," *Summit Towne Centre, Inc.*, 828 A.2d at 1001 (emphasis added). We view the parties' arguments in the same way – as whether the trial court abused its discretion in determining that the County was **likely** to succeed on the merits and had a **clear right** to relief.

Appellant raises four issues to this Court,[13] arguing that the trial court: erred in relying on *DeVito* as binding precedent; violated its constitutional rights to due process and equal protection; violated the separation of powers doctrine; and erred in finding that the Governor had the authority to suspend and supersede the mandatory rule-making procedures.[14] Appellant's arguments reflect its position that

---

[13] We have reordered Appellant's arguments for ease of discussion.

[14] Absent from Appellant's arguments are any challenges to the trial court's conclusion that the County met its burden on the other five requirements for obtaining a preliminary injunction, which the County maintains are supported by substantial evidence. Although Appellant cites, in its statement of the facts, evidence it believes supports its position and questions the trial court's acceptance of and reliance on the County's evidence, "the facts are to be viewed in the light most favorable to the winner at the trial court level." *Snyder*, 977 A.2d at 41. "If the record supports the trial court's reasons and factual basis, the [trial] court did not abuse its discretion." *Id.* (internal quotation marks and citation omitted). Implicit in Appellant's recitation of the facts is a request for this Court to reweigh the evidence, but our standard of review does not permit us to reweigh the evidence or make new factual findings, including credibility determinations. *Summit Towne Centre, Inc.*, 828 A.2d at 1005. Thus, Appellant has not established that the trial court abused its discretion in holding that the County satisfied these requirements.

16

the trial court erred in determining that the County was likely to succeed on the merits of the Complaint. "To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 506 (Pa. 2014). "For a right to be clear, it must be more than merely viable or plausible . . . ." *Wolk v. Sch. Dist. of Lower Merion*, 228 A.3d 595, 611 (Pa. Cmwlth. 2020) (internal quotation marks and citation omitted). "If the party has met the other requirements for a preliminary injunction and the underlying legal action raises important questions, the right to relief is clear." *Lieberman Org. v. Philadelphia*, 595 A.2d 638, 640 (Pa. Cmwlth. 1990).

### 1. *DeVito*

Appellant argues the trial court erred in holding that *DeVito* was binding precedent because, according to Appellant, the Supreme Court in *DeVito* "relied upon the fact that the deprivation of rights was a temporary, stop gap measure." (Appellant's Brief (Br.) at 22.) Appellant further points to the timing of *DeVito*, which was decided in April 2020, as limiting the scope of that opinion.

The County responds that Appellant's arguments concerning *DeVito* are misplaced because "[t]he date the decision was issued is immaterial to the analysis of that case and its impact on the present matter." (County's Br. at 25.) The County notes that, to the extent *DeVito* analyzed the measures as being "temporary," such analysis was associated with takings claims that are not raised here. Rather, the County posits, the holdings of *DeVito* regarding the Governor's authority under the Emergency Code remain precedential and support the trial court's decision.

17

Appellate review of a trial court's decision to grant a preliminary injunction is limited to whether "the rule of law relied upon was **palpably erroneous or misapplied** . . . ." *Roberts*, 341 A.2d at 478 (emphasis added). The trial court's reliance on *DeVito* does not meet this standard. While *DeVito* was decided in April 2020, at the beginning of the COVID-19 pandemic, there is nothing therein that limits its applicability to a particular time period. Rather, the Supreme Court examined the relevant statutes and the United States and Pennsylvania Constitutions to determine whether the Governor had the authority to issue the Proclamation and what powers were given by the Emergency Code based on the declaration of a disaster. Although there is some discussion regarding the temporary nature of the restrictions, this related to whether the temporary closure of non-essential businesses was an unconstitutional taking. *DeVito*, 227 A.3d at 894-96. While Appellant appears to apply a very restrictive reading of the term "temporary," the term simply means "lasting, existing, serving, or effective for a time only; **not permanent**."[15] The Court can take judicial notice that the mitigation measures directed by the Governor and DOH have changed throughout the course of the COVID-19 pandemic. Moreover, as of May 31, 2021, the mitigation orders were lifted, with the exception of masking requirements, which were lifted on June 28, 2021.[16] This

---

[15] *Temporary*, https://www.dictionary.com/browse/temporary# (last visited July 22, 2021).

[16] *See* COVID-19 in Pennsylvania, Pennsylvania Department of Health, available at https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last visited July 22, 2021); *see also Pennsylvania Will Fully Reopen Memorial Day*, The Philadelphia Inquirer, May 4, 2021, available at https://www.inquirer.com/health/coronavirus/pennsylvania-coronavirus-restrictions-lifted-memorial-day-20210504.html (last visited July 22, 2021); *Pennsylvania Sets Date to End Mask Mandate*, https://www.pittsburghmagazine.com/pennsylvania-sets-date-to-end-mask-mandate/ (last visited July 22, 2021). "The court may judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pennsylvania Rule of Evidence 201(b)(2), Pa.R.E. 201(b)(2).

18

reflects that such measures were "**not permanent**," but temporary.[17] Accordingly, we cannot say that the trial court's reliance on *DeVito* was palpably erroneous as required to conclude that the trial court abused its discretion in following *DeVito* as precedential.

## 2. Due Process and Equal Protection

Appellant asserts the entry of the preliminary injunction violated its rights to procedural and substantive due process, as well as its right to equal protection, under the Fourteenth Amendment to the United States Constitution.[18] First, Appellant maintains its procedural due process rights were violated when ACHD issued the Suspension and Closure Order without notice and a hearing. Second, Appellant

---

[17] During oral argument, the County indicated that if the only remaining issue with reinstating Appellant's Permit was the refusal to comply with the masking requirements, once those requirements were lifted, Appellant's Permit would be restored. Consistent with that statement, following argument, the County notified Appellant by letter dated June 24, 2021, that the Permit would be reinstated effective June 28, 2021, which coincided with the Governor's lifting of the masking requirements. Appellant then filed an Application for Post-Submission Filing, seeking to introduce that letter, which the Court grants. Although the reinstatement of the Permit would seem to render this matter moot, the letter also states that the County reserved the right to seek the imposition of civil penalties, which the County also sought in the underlying Complaint. In addition, Appellant's challenge to the trial court's legal reasoning for granting the preliminary injunction remains. Given the potential imposition of civil penalties, as well as the possibility that such issues may arise again and evade review due to the temporary nature of these types of orders, the Court will not find this appeal moot. *See Dep't of Env't Prot. v. Cromwell Township, Huntingdon County*, 32 A.3d 639, 652 (Pa. 2011) (holding that one of the well-recognized exceptions to the mootness doctrine is "where the conduct complained of is capable of repetition yet likely to evade review"). For similar reasons, the recent amendments to the Pennsylvania Constitution, approved by the Pennsylvania electorate on May 18, 2021, and the General Assembly's June 10, 2021 concurrent resolution terminating the disaster emergency declaration of March 6, 2020, as amended and renewed, do not render this matter moot.

[18] Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

19

asserts the trial court violated its substantive due process rights by upholding the suspension of the permit and not following *County of Butler*, which recognized "the right of citizens to support themselves by engaging in a chosen occupation" that may not be infringed by "arbitrary, wrongful, government action." (Appellant's Br. at 16 (citing *County of Butler*, 486 F. Supp. 3d at 920).) Third, Appellant argues that the injunction violates its right to equal protection, as set forth in *County of Butler*, because while the occupancy in the Restaurant is limited, the mitigation measures allow "hundreds of people [to] congregate in stores, malls, [and] large restaurants based only on the occupancy limit of the building. Up to 20,000 people may attend [a] gathering in Carlisle . . . with [the Governor's] blessing." (*Id.* at 17 (citing *County of Butler*, 486 F. Supp. 3d at 907).)

The County responds that the trial court's grant of the Emergency Motion did not violate any of Appellant's constitutional rights. As to Appellant's procedural due process claims, the County argues that due process requires adequate notice, the opportunity to be heard, and the ability to defend oneself before an impartial tribunal, all of which were provided to, but not utilized by, Appellant. (County's Br. at 12 (citing *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013)).) The County notes that the record shows that prior to issuing the Suspension and Closure Order, ACHD cited Appellant three times for its noncompliance, each inspection report came with a letter to Appellant setting forth the right to appeal and receive a hearing, and Appellant did not appeal any of the citations or the Suspension and Closure Order. In response to Appellant's substantive due process and equal protection arguments, the County argues that the trial court properly applied the rational basis standard to these alleged violations and found, correctly, that the COVID-19 Control Measure Orders were rationally related to the legitimate governmental interest of protecting

20

the public's health during a pandemic. (*Id.* at 13 (citing *M. Rae, Inc. v. Wolf*, No: 1:20-CV-2366, 2020 WL 7642596 (M.D. Pa. Dec. 23, 2020)).) According to the County, Appellant's reliance on *County of Butler*, which is stayed pending the Third Circuit's review, is misplaced because that case did not involve or address the COVID-19 Control Measure Orders. To the extent Appellant relies on *County of Butler* to argue there was a violation of its equal protection rights, the County asserts that Appellant is not clear as to "who or what groups are receiving disparate treatment under the masking order." (County's Br. at 15 (emphasis omitted).) Further, the County points to the United States District Court for the Middle District of Pennsylvania's decision in *M. Rae, Inc.*, in which that court specifically found that the Governor's December 10, 2020 order prohibiting indoor dining in its entirety did not violate the equal protection clause "because indoor dining establishments were treated the same in comparison to each other." (*Id.* (citing *M. Rae, Inc.*, 2020 WL 7642596, at *9).) It is the same here, the County asserts, because all dining establishments were required to follow the same restrictions.

We must again review to determine if "the rule of law relied upon [by the trial court] was palpably erroneous or misapplied . . . ." *Roberts*, 341 A.2d at 478. We first address Appellant's procedural due process claim. Appellant is correct that procedural due process requires notice and an opportunity to be heard. The record shows, however, that ACHD advised Appellant of the violations found during the inspections, what needed to be done to correct the violations, and its right to appeal and request a hearing on more than one occasion. (Preliminary Injunction Hearing, Exs. D4, D7, D9-D12.) The Suspension and Closure Order similarly advised Appellant of the violations, what had to be done to remove the suspension, and its right to appeal and request a hearing. (*Id.* Exs. D3, D4b.) Appellant admittedly **did**

**not appeal any of the notices or** the Suspension and Closure **Order**. "'In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.'" *DeVito*, 227 A.3d at 898 n.17 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). There is no violation of "due process requirements [where] . . . procedural protection [is] available and the plaintiff has simply refused to avail [it]self of them." *Id.* (internal quotation marks omitted). Appellant has not argued that the due process procedure was unavailable or was patently inadequate; rather, when asked why Appellant did not appeal from any of ACHD's orders, Ms. Waigand replied, "I can't give you an answer." (R.R. at 153a-54a.) Pursuant to *DeVito*, "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the . . . courts to get back what [the plaintiff] wants," *DeVito*, 227 A.3d at 898 n.17, which is what Appellant sought to do by raising a procedural due process challenge in opposition to the Complaint and Emergency Motion. Thus, Appellant's procedural due process claim is not a reason to overturn the trial court's decision.

We next address Appellant's substantive due process and equal protection challenges, both of which rely almost exclusively on the trial court's refusal to apply the District Court's decision in *County of Butler*. Although not specifically argued by Appellant, its reliance on *County of Butler* suggests that the trial court should have concluded, as the District Court did in that case, that *Jacobson* is no longer good law and cannot support the trial court's conclusion that the rational basis test should be applied to the COVID-19 Control Measure Orders. We disagree that the trial court's decision not to rely on *County of Butler* was "palpably erroneous or [a] misappli[cation of the law] . . . ." *Roberts*, 341 A.2d at 478.

22

*County of Butler*, as a decision of a federal district court, is not binding on Pennsylvania courts, *West Chester Area School District v. A.M.*, 164 A.3d 620, 630, (Pa. Cmwlth. 2017), and the decision has been stayed pending appellate review by the Third Circuit Court of Appeals. Further, it involved challenges to the Governor's orders that restricted gatherings to a particular number of people, that closed non-life sustaining businesses, and that directed people to stay at home—not the COVID-19 Control Measure Orders at issue here. *County of Butler*, 486 F. Supp. 3d at 890. Thus, it is distinguishable from the matter *sub judice*.

The trial court recognized that there are questions regarding the ongoing viability of *Jacobson* in cases involving rights that implicate strict scrutiny. *See Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 (applying strict scrutiny to a mitigation order limiting occupancy at religious facilities and finding, without reference to *Jacobson*, that the order violated the First Amendment); *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020) (Alito, J., dissenting to denial of application for injunctive relief) (stating that *Jacobson* was not "the last word" and had to "be read in context," which was a substantive due process challenge, not a First Amendment challenge). However, "[t]he Supreme Court has not opined directly on *Jacobson's* continuing viability or its proper role in the COVID-19 pandemic." *M. Rae, Inc.*, 2020 WL 7642596, at *6. Indeed, numerous courts have held, as the trial court did here, that *Jacobson*'s standard was the same as the current rational basis standard. Thus, those courts applied the *Jacobson* standard to Fourteenth Amendment challenges that did not involve a suspect class or fundamental right, like the challenge here. *See, e.g.*, *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 70 (Gorsuch, J., concurring) (stating that *Jacobson* "essentially applied rational basis review to [the] challenge to [the] state law . . . .");

23

*Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 465-68 (5th Cir. 2021); *Stewart v. Justice*, No. 3:20-CV-0611, 2020 WL 6937725, at \*2-3, 8 (S.D. W. Va. Nov. 24, 2020); *M. Rae, Inc.*, 2020 WL 7642596, at \*5-6; *Desrosiers v. Governor*, 158 N.E.3d 827, 842-43, 845 (Mass. 2020).

Rational basis review applies to Fourteenth Amendment challenges, including substantive due process and equal protection challenges, so long as they do not involve a fundamental right or suspect classification. *Grossinger v. Unemployment Comp. Bd. of Rev.*, 485 A.2d 80, 82 & n.4 (Pa. Cmwlth. 1984). Under this standard, the challenged government action will be upheld for substantive due process purposes unless "there is no relationship between the [action] and a legitimate state interest," and "for equal protection purposes, [unless] the different treatment of the groups is unrelated to a legitimate state interest." *Morris v. Pub. Sch. Emps' Ret. Sys.*, 538 A.2d 1385, 1389 (Pa. Cmwlth. 1988). Further, "substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government." *Gresock v. City of Pittsburgh Civ. Serv. Comm'n*, 698 A.2d 163, 169 (Pa. Cmwlth. 1997) (citation omitted).

The trial court credited Dr. Brink's and Dr. Bogen's testimony regarding the efficacy of masking and the need for different social distancing requirements in restaurants as opposed to other indoor business establishments due to the different behaviors exhibited at the two types of businesses and how COVID-19 is spread. (R.R. at 74a-84a, 90a-94a, 119a-21a.) Based on that evidence, the trial court found there was a rational relationship between the COVID-19 Control Measure Orders, and ACHD's actions thereunder, and a legitimate governmental interest, the "intent to protect [the] public during a pandemic" and to stop the spread of COVID-19. (Trial Ct. Op. at 11-12, 16-17; Trial Ct. Suppl. Op. at 8-9.) While Appellant

24

challenges the efficacy of masking, such challenge asks this Court to reweigh the evidence and make credibility findings different than those of the trial court, which is beyond this Court's appellate review. *Summit Towne Centre, Inc.*, 828 A.2d at 1005. Additionally, although Appellant reasons that masking is ineffective because it does not guarantee protection, the rational basis test does not require mathematical precision, and courts are "to accept [the government's] generalizations even when there is an imperfect fit between the means and ends." *Heller v. Doe*, 509 U.S. 312, 321 (1993). Indeed, "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Id.* (internal quotations and citation omitted). As Chief Justice Roberts stated in his concurring statement to the denial of injunctive relief in *South Bay United Pentecostal Church v. Newsome*, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement[,]" and "[o]ur Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief) (quoting *Jacobson*, 197 U.S. at 38).[19] "When those officials 'undertake[ ] to act in

---

[19] Justice Kavanaugh likewise recognized in his dissent to the denial of injunctive relief in *Calvary Chapel Dayton Valley* that States "undoubtedly ha[ve] a compelling interest in combating the spread of COVID-19" and

> that courts should be very deferential to the States' line-drawing in opening businesses and allowing certain activities during the pandemic. For example, courts should be extremely deferential to the States when considering a substantive due process claim by a secular business that is being treated worse than another business. *Cf. Jacobson* . . . , 197 U.S. . . . [at] 25-28 . . . . Under the Constitution, state and local governments, not the federal courts, have primary responsibility for addressing COVID-19 matters such as quarantine requirements, testing plans, mask

**(Footnote continued on next page…)**

areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *Id.* (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). Even applying the standard Appellant quotes from *County of Butler*, we cannot say that, given the credited evidence, the more limited scope of the COVID-19 Control Measure Orders than those involved in that case, and the governmental interest at stake, the trial court's decision allows "arbitrary, wrongful, government action." 486 F. Supp. 3d at 920.

For these reasons, we cannot conclude that the trial court's conclusion that the County was likely to succeed on the merits of its claim was "palpably erroneous or [a] misappli[cation of the law] . . . ," *Roberts*, 341 A.2d at 478. Thus, this does not provide grounds for the Court to "interfere with the decision of the [trial court]." *Id.*

### 3. Separation of Powers

Appellant next argues the COVID-19 Control Measure Orders violate the separation of powers doctrine, again citing *County of Butler*, in which the District Court stated that "our founders abhorred the concept of one-person rule[]" and "decried government by fia[t]," and that a "response to a pandemic . . . cannot be permitted to undermine our system of constitutional liberties or the system of checks and balances protecting those liberties." 486 F. Supp. 3d at 901. Appellant contends that a majority of our Supreme Court "declined to address" the separation of powers argument raised in *Scarnati* and, thus, the question remains an open one for this Court to consider. (Appellant's Br. at 21.) Appellant argues the Court should look

---

mandates, phased reopenings, school closures, sports rules, adjustment of voting and election procedures, state court and correctional institution practices, and the like.

140 S. Ct. at 2613-14 (Kavanaugh, J., dissenting).

26

to the dissenting opinion in *Scarnati*, in which then-Chief Justice Saylor stated that he did not believe "the framers of the Pennsylvania Constitution contemplated that the Governor could be invested with a panoply of exceptional powers – including the delegated power to suspend laws . . ." with "the [General Assembly] . . . [being] powerless to implement a counterbalance . . . ." 233 A.3d at 714 (Saylor, C.J., dissenting). Appellant further points to decisions in other jurisdictions, namely Michigan and Wisconsin, which held that the actions of the governors in those states violated the separation of powers doctrine. (Appellant's Br. at 18-20 (citing *Midwest Inst. of Health, PLLC v. Governor of Michigan*, 958 N.W.2d 1 (Mich. 2020); *Fabick v. Evers*, 956 N.W.2d 856 (Wis. 2021) (Bradley, J., concurring)).)

The County argues that Appellant's reliance on extra-jurisdictional decisions on the separation of powers is misplaced because, in those non-precedential cases, the courts were reviewing the laws of those states, in which the legislatures did not place certain lawmaking powers in the executive branches, as the General Assembly did in the Emergency Code. According to the County, while Appellant relies on the dissent in *Scarnati*, the majority of the Pennsylvania Supreme Court "reviewed the Governor's emergency powers in relation to COVID-19 and the separation of powers doctrine and found that the Governor's orders complied with the Emergency Code and the [Pennsylvania] Constitution." (County's Br. at 27.) It further points to *Scarnati*'s conclusion that there was no violation of the non-delegation doctrine because, by enacting the Emergency Code, the General Assembly made the policy choice to allow the Governor to exercise certain powers upon the Governor's finding that a disaster has occurred or was imminent, and provided "adequate standards [to] guide and restrain the exercise of the delegated administrative functions." (*Id.* at 27 (quoting *Scarnati*, 233 A.3d at 704-05).)

As before, we must review to see if "the rule of law relied upon [by the trial court] was palpably erroneous or misapplied . . . ." *Roberts*, 341 A.2d at 478. Appellant's arguments that the trial court erred in concluding that there was no violation of the separation of powers doctrine rely on the general statements regarding the principles of that doctrine from *County of Butler*, the holdings of the Supreme Courts of Wisconsin and Michigan, which interpreted the statutory provisions of those states, and the dissenting opinion of then-Chief Justice Saylor in *Scarnati*. However, none of these authorities are binding on either the trial court or this Court. Importantly, although Appellant contends this issue remains undecided by our Supreme Court, our Supreme Court has already interpreted Pennsylvania's Emergency Code and found that its provisions do not violate the separation of powers doctrine or the non-delegation doctrine. *Scarnati*, 233 A.3d at 705; *DeVito*, 227 A.3d at 886-87, 892-93.

In *Scarnati*, the Supreme Court addressed whether the General Assembly could end the Governor's Proclamation by passing concurrent resolutions and without presenting those resolutions to the Governor for approval or veto. To resolve this issue, the Supreme Court was presented with arguments by a group of Pennsylvania senators (Senators), who asserted that the Emergency Code's provisions, particularly those related to the Governor's ability to declare and end an emergency and to suspend laws during a declared emergency, violated the non-delegation and separation of powers doctrines. The Supreme Court held the General Assembly could only end the emergency declaration by presenting the concurrent resolutions to the Governor for approval or veto and, if vetoed, override the veto;

28

and the Emergency Code did not violate the non-delegation and separation of powers doctrines.[20]

On the issue of non-delegation, the Supreme Court reasoned there was no violation because, in enacting the Emergency Code, the General Assembly, "'ma[de] the basic policy choices'" by deciding "that the Governor should be able to exercise certain powers when he or she makes a 'finding that a disaster has occurred or that the occurrence of the threat of a disaster is imminent.'" *Id.* at 704 (quoting *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 834 (Pa. 2017); 35 Pa.C.S. § 7301(c)). Further, the Supreme Court explained that

> the General Assembly has provided "adequate standards which will guide and restrain" the Governor's powers. *Protz*, 161 A.3d at 834. The General Assembly gave the Governor specific guidance about what he can, and cannot, do in responding to a disaster emergency. *See* 35 Pa.C.S. §§ 7301(d)- (f), 7302, 7303, 7308. The powers delegated to the Governor are admittedly far-reaching, but nonetheless are specific. For example, the Governor can "[s]uspend the provisions of any regulatory statute . . . *if strict compliance with the provisions . . . would in any way prevent, hinder or delay necessary action in coping with the emergency*." [35 Pa.C.S.] § 7301(f)(1) (emphasis added). Broad discretion and standardless discretion are not the same thing. Only those regulations that hinder action in response to the emergency may be suspended. It may be the case that the more expansive the emergency, the more encompassing the suspension of regulations. But this shows that it is the scope of the emergency, not the Governor's arbitrary discretion, that determines the extent of the Governor's powers under the statute.

*Id.* at 704-05.

---

[20] The Court acknowledges that the Supreme Court stated that the non-delegation argument was waived due to the Senators raising it for the first time in their reply brief. *Scarnati*, 233 A.3d at 704. However, to the extent the Supreme Court's discussion on this issue could be viewed as non-binding dicta, it is persuasive.

On the latter doctrine, the Supreme Court reiterated its prior holding in *DeVito* that "the Governor's delegated power under Section 7301(c) [of the Emergency Code to declare a disaster emergency], . . . [means that] the Governor's actions do not violate the separation of powers doctrine[.]" *Scarnati*, 233 A.3d at 705 (citing *DeVito*, 227 A.3d at 892-93). In *DeVito*, the Supreme Court explained that "[t]he Emergency Code belie[d the p]etitioner's position" that the Governor's actions violated the separation of powers doctrine because it "specifically recognize[d] that under its auspices, the Governor has the authority to" take the actions delineated within the Emergency Code. 227 A.3d at 885, 892.

Based on the Supreme Court's decisions in *Scarnati* and *DeVito*, we cannot say that the trial court's application of the plain language of the Emergency Code and **our** Supreme Court's interpretation of that language "was palpably erroneous or [a] misappli[cation of the law] . . . ." *Roberts*, 341 A.2d at 478. Therefore, this is not a reason for this Court to interfere with the trial court's decision concluding that the County met its burden of proof on this requirement.

4. The Mandatory Rule-Making Procedures

Finally, Appellant asserts the trial court erred in concluding that the COVID-19 Control Measure Orders were valid where neither DOH nor the Governor complied with the mandatory rule-making procedures set forth in the Commonwealth Documents Law, the Regulatory Review Act, and the Commonwealth Attorneys Act. According to Appellant, the trial court erred in holding that the Governor had the authority to suspend these mandatory procedures, pointing to the Wisconsin Supreme Court's decisions in *Wisconsin Legislature v. Palm*, 942 N.W.2d 900 (Wis. 2020) (finding the secretary of state's order closing non-essential businesses unenforceable due to the secretary's failure to comply with

the mandatory rule-making requirements), and *Tavern League of Wisconsin, Inc. v. Palm*, 957 N.W.2d 261 (Wis. 2021) (holding the same as to the secretary's order limiting indoor public gatherings to 25% of a facility's capacity), as instructive. Therefore, Appellant maintains, the failure of DOH and the Governor to comply with the mandatory rule-making procedures rendered the COVID-19 Control Measure Orders unenforceable as a matter of law. (Appellant's Br. at 24-25 (citing *Germantown Cab Co. v. Phila. Parking Auth.*, 36 A.3d 105 (Pa. 2012)).) Absent these orders, Appellant maintains ACHD lacked the authority to issue the Suspension and Closure Order.

The County argues that the trial court properly held that Section 7301(f)(1) of the Emergency Code, 35 Pa.C.S. § 7301(f)(1), authorized the Governor to suspend the mandatory rule-making procedures following his COVID-19 disaster declaration, a conclusion recognized by the Supreme Court in *DeVito*, 227 A.3d at 885-86. As the Emergency Code is a proper exercise of the Commonwealth's police power, as recognized by the Supreme Court in both *DeVito*, 227 A.3d at 883-84, and *Scarnati*, 233 A.3d at 695, the County argues the Governor could rely on that statute to suspend the otherwise mandatory rule-making procedures. Further, the County asserts the trial court properly found that ACHD's actions were legally supported by other statutes, including the Administrative Code, the Disease Prevention and Control Act, and the Local Health Law, because the record established that the Suspension and Closure Order was intended to abate a nuisance detrimental to the public health, the spread of COVID-19, which is a communicable disease that has caused widespread illness and death.

We review the trial court's Order to determine if "the rule of law relied upon [by the trial court] was palpably erroneous or misapplied . . . ." *Roberts*, 341 A.2d

31

at 478. Appellant's arguments that the trial court erred in concluding that the mandatory rule-making procedures were not applicable to the COVID-19 Control Measure Orders rely on the holdings of the Supreme Court of Wisconsin, which interpreted the statutory provisions of that state.[21] However, our Supreme Court has already interpreted Pennsylvania's Emergency Code and found that the Emergency Code is a valid exercise of the police power, does not violate the separation of powers doctrine, and grants "broad powers" to the Governor. *DeVito*, 227 A.3d at 886-87, 892-93. *See also Scarnati*, 233 A.3d at 705. Section 7301(b) of the Emergency Code grants the Governor the power to issue "executive orders, proclamations and regulations which shall have the force and effect of law." 35 Pa.C.S. § 7301(b). Another specific power granted to the Governor, as recognized by the Supreme Court in *Scarnati*, 233 A.3d at 705, and *DeVito*, 227 A.3d at 885, is the Governor's power to "**[s]uspend** the provisions of any regulatory statute prescribing the procedures for conduct of Commonwealth business, or the orders, rules or regulations of any Commonwealth agency, if strict compliance . . . would in

---

[21] Appellant filed an Application for Post-Submission Filing (Application), requesting that the Court review two cases it asserts "are directly relevant to the issue presented in this case": *Ridgeway Properties, LLC v. Beshear*, No. 20-CI-00678 (Boone Co. Ky., June 8, 2021), and *Green v. Alachua County*, __ So.3d __ (Fla. Dist. Ct. App., June 11, 2021), 2021 WL 2387983. (Application at 2.) The Court grants the Application; however, our review of these cases does not change the result herein. Respectively, these cases involved: a question of whether Kentucky's governor could continue to enforce certain executive orders, including a masking order, following the enactment, over vetoes, of inconsistent, limiting legislation; and a remand to a trial court for that court to apply the correct standard for reviewing a request for an emergency temporary injunction of a county mask mandate under Florida law, which provides that laws implicating privacy rights under the Florida Constitution are presumptively unconstitutional for purposes of temporary injunctions and that the government bears the burden of proof to defeat the request for an injunction. Both cases involve issues particular to their respective state's laws, which are not at issue in this matter. In addition, both the Kentucky circuit court, a trial court, in *Ridgeway Properties* and the Florida District Court of Appeals in *Green* acknowledged that their decisions **conflicted** with other decisions in their states, which would have to be resolved on appeal, raising questions regarding their ongoing validity.

any way prevent, hinder or delay necessary action in coping with the emergency," pursuant to Section 7301(f)(1) of the Emergency Code, 35 Pa.C.S. § 7301(f)(1) (emphasis added). Our Supreme Court observed that "[t]he General Assembly itself chose the words in Section 7301(f)(1)[]" and "could have provided the Governor with less expansive powers under the Emergency . . . Code[, but i]t did not do so." *Scarnati*, 233 A.3d at 705. In light of the above, we cannot say that the trial court's application of the plain language of Section 7301(f)(1), and **our** Supreme Court's interpretation of that language, "was palpably erroneous or [a] misappli[cation of the law] . . . ." *Roberts*, 341 A.2d at 478. Therefore, this is not a reason for this Court to interfere with the trial court's decision concluding that the County met its burden of proof on this requirement.

## IV. Conclusion

For the foregoing reasons, we cannot say that there are no grounds that exist to support the trial court's grant of the preliminary injunction or that the rule of law relied upon by the trial court was palpably erroneous or misapplied. *Roberts*, 341 A.2d at 478. Therefore, we will not interfere with the decision of the trial court. *Id.* Accordingly, the trial court's February 3, 2021 Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge McCullough did not participate in the disposition of this matter.

33

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, a political   :
subdivision of the                :
Commonwealth of Pennsylvania   :
                          :
         v.               :   No. 101 C.D. 2021
                          :
The Cracked Egg, LLC,        :
             Appellant    :

## **O R D E R**

**NOW**, July 23, 2021, Appellant's Applications for Post-Submission Filing are **GRANTED**, and the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge